IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROXANA NOLASCO RENDEROS,

    *Plaintiff*,

v.

NIKITA BAKER, *et al.*,

    *Defendants*

Case No. 25-cv-3087-ABA

**MEMORANDUM OPINION AND ORDER**

    Petitioner Roxana Nolasco Renderos is a citizen of El Salvador who, until she was detained on September 16, 2025, by U.S. Immigration and Customs Enforcement ("ICE") during a routine check-in, had resided in Maryland for approximately fifteen years. ECF No. 1 ¶¶ 16, 18. On December 26, 2024, an immigration judge granted Ms. Nolasco Renderos withholding of removal as to El Salvador. *Id.* ¶ 17; ECF No. 1-1. Following her September 16, 2025 detention, ICE served on her a Notice of Removal stating that ICE "intends to remove you to Mexico," and a Notice of Revocation of Release stating, "Your case is under current review by the Government of Mexico for third country removal." ECF Nos. 10-4 & 10-7. Ms. Nolasco Renderos has filed a petition for a writ of habeas corpus, seeking release from detention. ECF No. 1.

    Because the Constitution prohibits "indefinite detention," when the government wishes to remove a noncitizen to another country, the applicable detention statute, 8 U.S.C. § 1231(a)(6), only authorizes detention after a 90-day removal period if removal is "reasonably foreseeable." *Zadvydas v. Davis*, 533 U.S. 678, 689, 699 (2001). The two documents cited above along with a renewed Notice of Revocation of Release constitute

1

the only evidence in the record on the foreseeability of Ms. Nolasco Renderos's removal to Mexico. Ms. Nolasco Renderos argues that, because she is subject to a reinstated order of removal pursuant to 8 U.S.C. § 1231(a)(5) and thus is entitled to a reasonable fear interview based on her assertion of fear of removal to Mexico and, upon any negative determination, *de novo* review by an immigration judge—and because the government has refused to provide her this process—the government has not shown that a *lawful* removal is reasonably foreseeable. ECF No. 11 at 15–17; ECF No. 17. The government argues that Ms. Nolasco Renderos is not entitled to this process with regard to third country removals and that she has received all the process to which she is entitled. ECF No. 20 at 8.

For the reasons discussed below, the Court concludes that Ms. Nolasco Renderos is entitled to the process laid out in 8 C.F.R. §§ 208.31 and 1208.31, but the record at present does not rise to the level of entitling Ms. Nolasco Renderos to a writ of habeas corpus. However, should the government continue to refuse to provide Ms. Nolasco Renderos with the process to which she is entitled, the Court finds that her removal will no longer be reasonably foreseeable such that she will be entitled to release.

I.   BACKGROUND

Petitioner Roxana Nolasco Renderos is a native and citizen of El Salvador. ECF No. 1 ¶ 16; ECF No. 10-1 at 6. On May 7, 2010, Ms. Nolasco Renderos was apprehended by U.S. Border Patrol after she illegally entered the United States near the Arizona border. ECF No. 10-1 at 6. On May 10, 2010, Border Patrol issued and served her with a Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1). ECF No. 10-3 at 2. She was then removed back to El Salvador. ECF No. 10-1 at 7.

Petitioner re-entered the United States illegally and was apprehended in Maryland on October 18, 2011, at which time she was served with a Notice of Intent/Decision to Reinstate Prior Order of Removal pursuant to 8 U.S.C. § 1231(a)(5) based on her previously executed 2010 removal order. ECF No. 10-1 at 7; ECF No. 11-1. She expressed a fear of returning to El Salvador and was later released from custody on an Order of Supervision. ECF No. 1 ¶ 16; ECF No. 10-1 at 7. There is no evidence that Ms. Nolasco Renderos violated any of the terms of her Order of Release. ECF No. 1 ¶ 16; ECF No. 11 at 2. United States Citizenship and Immigration Services ("USCIS") did not conduct her reasonable fear interview until March 3, 2015 (nearly four years after her expression of fear) and the officer found that she had not established a reasonable fear of persecution or torture in El Salvador. ECF No. 11 at 2; ECF No. 1-2. Upon request, USCIS referred her case to an immigration judge for review and Ms. Nolasco Renderos remained on supervised release. ECF No. 11 at 2. The immigration judge disagreed with the USCIS officer's findings and, on December 26, 2024, granted Petitioner withholding of removal as to El Salvador. ECF No. 11; ECF No. 1-1.

During her ICE check-in on September 16, 2025, Petitioner's order of release was revoked, and she was served with a Notice of Removal stating that ICE "intends to remove you to Mexico," and a Notice of Revocation of Release stating, "Your case is under current review by the Government of Mexico for third country removal." ECF Nos. 10-4 & 10-7. On September 17, 2025, Petitioner, through counsel, asserted her fear of removal to any third country. ECF No. 1-7 at 5–6.[1]

---

[1] The Court has previously found that Petitioner's counsel's email constituted Petitioner's expression of fear of removal to Mexico. ECF No. 16 ¶ 1.

On September 17, 2025, Petitioner filed a petition for a writ of habeas corpus seeking release from ICE custody. ECF No. 1 at 9. She alleges that her continued detention by ICE violates 8 U.S.C. § 1231(a) as interpreted by the Supreme Court in *Zadvydas* (count 1) and due process (count 2). *Id*. at 6–9.

On October 1, 2025, Respondents filed a response to the petition and a motion to dismiss. ECF No. 10. On October 8, 2025, Petitioner filed a reply brief in which she first mentioned the government's alleged failure to provide her with the reasonable fear determination procedures pursuant to 8 C.F.R. § 208.31. ECF No. 11. Therefore, the Court ordered Respondents to provide a status update on any reasonable fear interview conducted. ECF No. 12. In its status report, the government stated that Ms. Nolasco Renderos had not been granted a reasonable fear interview. ECF No. 13.

During a status conference on November 18, 2025, the government indicated its willingness to provide Ms. Nolasco Renderos with a reasonable fear *screening* should the Court so order but argued that a reasonable fear *interview* was not warranted. ECF No. 15. The Court ordered the government to provide Ms. Nolasco Renderos with a reasonable fear screening as the parties submitted supplemental briefing on the applicability of 8 C.F.R §§ 208.31 and 1208.31. ECF No. 16 ¶¶ 2–3. A USCIS officer conducted a "Third Country Removal Screening" on November 25, 2025, and determined that Petitioner had "not established that it is more likely than not that [she] will be persecuted or tortured in Mexico." ECF No. 20-5. The Court then held a hearing on December 5, 2025 on the habeas petition, the motion to dismiss, and the applicability of the reasonable fear procedures to Ms. Nolasco Renderos. ECF No. 23.

Petitioner contends that because she is subject to a reinstated order of removal and has expressed a fear of removal to Mexico, she is entitled to a reasonable fear

4

interview (not just a "screening") and, if the interview results in a negative finding, *de novo* review by an immigration judge under 8 C.F.R. §§ 208.31 and 1208.31. ECF No. 17 at 2–10. She further argues that, because this process could, and did previously in her case, take months or years, this means that she is not likely to be removed in the reasonably foreseeable future and thus should be released. *Id*. at 10–12.

Respondents argue that Petitioner's detention is lawful and her claim is premature and thus should be dismissed. ECF No. 10-1 at 12–21. Respondents further argue that third country removals are permitted and that 8 C.F.R. §§ 208.31 and 1208.31 do not apply to these removals. ECF No. 20 at 7–8. Therefore, it contends that Petitioner has been granted all of the process to which she is entitled and that her removal to Mexico is imminent. *Id*. at 11–13. At no time has Petitioner requested that the Court enjoin Respondents from removing her from the United States. But at the December 5 hearing, Petitioner argued that removal prior to completing a reasonable fear interview and immigration judge review would violate Petitioner's rights under the applicable regulations and due process.

**II.   Discussion**

Ms. Nolasco Renderos requests an order releasing her from immigration detention; that is the sole form of relief she seeks from this Court, at least at this time. As explained below, regardless of whether Ms. Nolasco Renderos is within a six-month period during which detention is "presumptively reasonable" under *Zadvydas* (the applicability of which this Court need not decide), this Court must determine whether removal is "reasonably foreseeable." 533 U.S. at 699–701. The Court concludes that Ms. Nolasco Renderos is entitled to the reasonable fear procedure outlined in 8 C.F.R. §§ 208.31 and 1208.31, but that she has not shown an entitlement to release from

detention at this time. Ms. Nolasco Renderos does raises substantial questions in that regard, however, as continued refusal by the government to provide her with the process to which she is entitled would make removal no longer reasonably foreseeable. As a result, should the government refuse to provide her with the reasonable fear procedures outlined in the regulations, the Court will order Ms. Nolasco Renderos's immediate release.

### A. The applicability of the reasonable fear procedures

If a noncitizen "reenter[s] the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date." 8 U.S.C. § 1231(a)(5). Where the government seeks to effectuate a person's removal by reinstating a prior order of removal (as opposed to obtaining a new order of removal), and where the person asserts a "[r]easonable fear of persecution or torture," the removal procedure is governed by 8 C.F.R. § 208.31, which applies to personnel of the Department of Homeland Security (including USCIS), and 8 C.F.R. § 1208.31, which applies to the Executive Office for Immigration Review ("EOIR"), which is part of the Department of Justice and includes immigration judges. Those regulations for "aliens whose removal is reinstated under [8 U.S.C. § 1231(a)(5)]" apply in parallel. They both provide that USCIS "has exclusive jurisdiction to make reasonable fear determinations" and that EOIR "has exclusive jurisdiction to review such determinations." 8 C.F.R. §§ 208.31(a) & 1208.31(a).

Under those regulations, if DHS issues a "notice" that a person is subject to a reinstated order of removal (as was issued to Petitioner in this case), *see* 8 C.F.R. § 208.31(b) (referring to "notice under § 241.8(b)"), and if that person "expresses a fear of returning to the country of removal," DHS must "refer[] to an asylum officer for a

6

reasonable fear determination." 8 C.F.R. § 208.31(b); *see also* 8 C.F.R. § 241.8(e) (reiterating that "[i]f an alien whose prior order of removal has been reinstated under this section expresses a fear of returning to the country designated in that order, the alien shall be immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture pursuant to § 208.31 of this chapter"). Should the asylum officer find that the noncitizen has not established a reasonable fear of persecution or torture, the officer must inquire whether the noncitizen wishes for an immigration judge to conduct a *de novo* review and, if so, refer the case to an immigration judge. 8 C.F.R. §§ 208.31(e) & 1208.31(f)–(g). "Execution" of any "reinstated order of removal" must "be administered in accordance with [Part 241 of C.F.R. Title 8]." *Id.* § 241.8(f).

It is undisputed here that:

- in 2011, Ms. Nolasco Renderos's 2010 order of removal was reinstated pursuant to 8 U.S.C. § 1231(a)(5), the statute governing "Reinstatement of removal orders against aliens illegally reentering" (*see* ECF No. 10-1 at 7; ECF No. 11 at 2; ECF No. 20-1);

- Respondents have detained Ms. Nolasco Renderos pursuant to that reinstated removal order (*see* ECF No. 10-4 at 2; ECF No. 10-6 at 2; ECF No. 17 at 3); and

- Ms. Nolasco Renderos was previously given the procedures outlined in 8 C.F.R. §§ 208.31 and 1208.31 based on her assertion of fear of removal to El Salvador, which resulted in her withholding of removal as to El Salvador (*see* ECF No. 1-1; ECF No. 1-2; ECF No. 30 at 3).

At this point, with Petitioner having obtained withholding of removal with respect to El Salvador, Respondents seek to remove Petitioner to a different country: Mexico. Petitioner has asserted that she fears she will be persecuted or tortured in Mexico. ECF No. 1-7 at 3–6. Thus, the question before the Court is whether that same procedure applies now that applied when Respondents sought her removal to El Salvador. The answer is yes; the clear language of the three regulations that govern reinstated removal orders (8 C.F.R. §§ 241.8, 208.31, and 1208.31) does entitle her to that same procedure, namely a reasonable fear interview (not just a "screening") and, if negative, review by an immigration judge.

Under 8 C.F.R. § 208.31(b), the reasonable fear determination procedure is triggered "[u]pon issuance of a . . . notice under § 241.8(b) of this chapter that an alien is subject to removal." That "notice" is explicitly defined as notice that an officer has "determine[d] that an alien is subject to removal under this section." 8 C.F.R. § 241.8(b). Under the plain language of §§ 208.31(b) and 241.8(b), Respondents are seeking to remove Petitioner pursuant to the reinstated removal order. Respondents identify no reason that the Notice of Revocation of Release or the Notice of Removal do not constitute notice that Ms. Nolasco Renderos is once again *subject to removal* under her reinstated removal order such that the procedure has been triggered.

This conclusion is confirmed by other language in 8 C.F.R. § 241.8. Subsection (f) provides that the "[e]xecution of the reinstated order of removal and detention of the alien shall be administered in accordance with this part." Therefore, the *execution* of a reinstated order of removal, not just the initial *issuance* of the reinstatement, must be administered in accordance with § 241.8(e). Section 241.8(e), in turn, provides that, upon a noncitizen subject to a reinstated order expressing a fear of removal to the

8

country designated, "the alien shall be immediately referred to an asylum officer *for an interview* to determine whether the alien has a reasonable fear of persecution or torture pursuant to § 208.31 of this chapter" (emphasis added). Although Petitioner's original order of removal, which has now been reinstated, was *issued* fifteen years ago, the government is currently attempting to *execute* that order by seeking Petitioner's removal to a different country, Mexico. Reading 8 C.F.R. § 208.31 and § 241.8 to apply only upon the initial issuance of a notice of reinstatement, as the government has suggested, would leave § 241.8(f) without meaning. Reading the two regulatory provisions together, it becomes clear that the right to the reasonable fear determination procedure applies to the government's attempt to execute Ms. Nolasco Renderos's reinstatement removal order by removing her to Mexico.

      Petitioner also points out that although §§ 208.31(a) and 1208.31(a) refer to a "fear of *returning* to the country of removal" (emphasis added), those regulations still apply when the government seeks removal to a "third" country, *i.e.* a country different from the person's country of origin. ECF No. 17 at 4–7. The government does not argue that the "returning" language limits the application of the regulation – and for good reason because, in context, the DHS and EOIR regulations clearly apply whenever a person asserts a fear of being sent to the country to which the government seeks the person's removal. As a textual matter, the regulations themselves repeatedly refer to "reasonable fear" of removal without suggesting that such relief is only available if the person has a fear of persecution or torture in the country from which they arrived. *See, e.g.*, 8 C.F.R. § 208.31(b) ("[A]n alien described in paragraph (a) of this section shall be referred to an asylum officer for a reasonable fear determination."); 8 C.F.R. § 208.31(c) ("The alien shall be determined to have a reasonable fear of persecution if the alien

establishes a reasonable possibility that he or she would be persecuted on account of his or her race, religion, nationality, membership in a particular social group or political opinion."); 8 C.F.R. § 1208.31(f) ("If the asylum officer determines that the alien has not established a reasonable fear of persecution or torture, the asylum officer shall inform the alien in writing of the decision."). And those regulations implement the withholding of removal and Convention Against Torture ("CAT") statutes, which both prohibit the government from removing a person to any country where, for example, "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see* Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105–277, § 2242(d), 112 Stat. 2681, codified as note to 8 U.S.C. § 1231.

In other words, Congress has prohibited the Executive Branch from removing persons to any country where they are likely to be tortured or persecuted on protected grounds (such as religion, political opinion, etc.), and the regulations that implemented those statutory protections in the context of reinstated orders of removal have selected a procedure for adjudicating such claims: a reasonable fear interview followed by, if negative and upon request, immigration judge review. Although some of the language in 8 C.F.R. §§ 208.31(a) and 1208.31(a) suggests that the drafters of those regulations were focused on the scenario where immigration authorities seek to removal a person to the same country they arrived from (*i.e.* "returning" them to that country), as opposed to the until-now far-less-common scenario where immigration authorities seek removal to a third country, in context the procedures set forth in those regulations clearly apply to the latter, *i.e.*, where prior removal orders are "reinstated" but the country that DHS proposes to send the person is a "third" country.

Beyond the textual grounds discussed above, interpreting § 208.31 as inapplicable to third country removals would lead to absurd results. Petitioner argues that "Respondents' interpretation of 8 C.F.R. § 208.31 reads a gap into the regulatory framework that would allow the government to carry out third country removals without affording the noncitizen who expresses fear *any* procedures." ECF No. 17 at 7–8. Although Respondents contend that this was the regulatory gap that the DHS March Guidance was intended to fill, ECF No. 20 at 8 & ECF No. 10-2, that argument assumes there was in fact a regulatory "gap." There is no such gap, for the reasons discussed above. And regardless, Respondents fail to show why Congress or the agencies that promulgated the implementing regulations described above intended that a person in Ms. Nolasco Renderos's position would be entitled to less process now than she was just one year ago when her withholding of removal based on a reasonable fear determination was issued. Respondents' reading would also interpret the regulations as requiring a noncitizen to predict every country to which the government may try to remove them in the future—despite there only being one country of removal designated at that point—or otherwise lose the right to the reasonable fear determination process if another country is designated later. Congress cannot have intended this result when it enacted the withholding of removal statute, 8 U.S.C. § 1231(b)(3)(A), or CAT, FARRA. And DHS and DOJ cannot have intended this result when they promulgated 8 C.F.R. §§ 241.8, 208.31 and 1208.31.

Accordingly, based on both the text and intent of the statutes and regulations at issue, Ms. Nolasco Renderos is entitled to the reasonable fear determination procedure, including a reasonable fear interview by an asylum officer and, if a negative determination, *de novo* review by an immigration judge.

B.   Petitioner's *Zadvydas* claim

Ordinarily, when an individual is issued a final order of removal, that person must be removed from the country within 90 days. 8 U.S.C. § 1231(a)(1)(A). Under § 1231(a)(6), the government is permitted to continue to detain individuals who are deemed "inadmissible" beyond the removal period, or it may release them under specified terms of supervision. *Id.* § 1231(a)(6); *see also id.* § 1182 (identifying categories of immigrants who are "inadmissible").

But a "statute permitting *indefinite* detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690 (emphasis added). Thus, although § 1231(a)(6) does not contain an explicit limit on the length of detention in those circumstances, the *Zadvydas* Court held that, in light of constitutional due process protections with respect to deprivations of liberty, the statute must be read to "contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* at 682. *Zadvydas* established that determining whether detention under particular circumstances is authorized requires deciding "whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* at 699. A habeas court "should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.*

To help "guide lower court determinations" on whether removal is "reasonably foreseeable" and to "limit the occasions when courts will need to make them," the Supreme Court held that six months of post-removal-order detention is "presumptively reasonable." *Id.* at 700–01. But this presumption is not a conclusive bar. "Although the Supreme Court established a six-month period of presumptively reasonable detention, it did not preclude a detainee from challenging the reasonableness of his detention

12

before such time." *Cruz Medina v. Noem,* 794 F. Supp. 3d 365, 375 (D. Md. 2025) (hereinafter, "*Cruz Medina I*") (*quoting Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395 (D.N.J. 2025)). "During the six-month period, '[t]he presumption of reasonableness is the default,' and the government 'bears no burden to justify detention.' But if a petitioner 'claim[s] and *prove[s]* … that his removal is not reasonably foreseeable'—including during the six-month period—the petitioner 'can overcome that presumption' and detention is no longer authorized." *Id.* (*quoting Munoz-Saucedo*, 789 F. Supp. 3d at 397).

Here, the government alleges, and Petitioner does not appear to dispute, that Ms. Nolasco Renderos is "inadmissible" under 8 U.S.C. § 1182 because she is present in the U.S. without a valid visa, permit, or other suitable entry or travel document. *See* ECF No. 10 at 13; 8 U.S.C. § 1182(a)(7)(A)(i). Petitioner argues that, because she must be afforded the protections provided in 8 C.F.R. §§ 208.31, 1208.31, and 241.8, her removal is not reasonably foreseeable until and unless Respondents have exhausted those procedures. ECF No. 17 at 10–12. Petitioner also argues that her removal is not reasonably foreseeable as the government has not provided evidence that it has "contacted the Mexican government, that the Mexican government is actively considering Petitioner's case, that the Mexican government will in fact provide Petitioner the requisite documents to enter Mexico, or that there is even a relationship between the United States and Mexico to place third country deportees." *Id.* at 12–13.

### 1. Delay in removal due to reasonable fear determination procedures

In *Vasquez Castaneda v. Perry*, the Fourth Circuit held that the petitioner who was subject to a reinstated order of removal and was undergoing withholding-only

13

proceedings under CAT had not shown that his removal was not significantly likely to occur in the reasonably foreseeable future. 95 F.4th 750, 758 (4th Cir. 2024). In coming to that conclusion, the court stated that "the clear takeaway from *Demore* [*v. Kim*, 538 U.S. 510 (2003)] and *Jennings* [*v. Rodriguez*, 583 U.S. 281 (2018)] is that '*Zadvydas* should not be expanded beyond the context of the *indefinite and potentially permanent* detention involved there.'" *Id.* at 757 (*quoting Miranda v. Garland*, 34 F.4th 338, 361 (4th Cir. 2022)). Thus, the Fourth Circuit held that continued detention pending the completion of withholding-only proceedings that had been voluntarily initiated by the petitioner were not of the type of "indefinite and potentially permanent" detention at issue in *Zadvydas* because withholding-only proceedings have an ending point. *Id.* The court did note that, although the petitioner's withholding-only proceedings had gone on longer than most, there was no indication that the delay in the proceedings was attributable to anything other than "ordinary litigation processes." *Id.* at 758 & n.7. This suggests that if delays in the withholding-only proceedings are caused by something other than "ordinary litigation processes," then a different outcome may be warranted.

In *Sagastizado Sanchez v. Noem*, the court first held that the only way the government could *lawfully* remove the petitioner to Mexico, the third country at issue in that case, was by providing him with the procedures provided for in 8 C.F.R. § 1208.31. -- F. Supp. 3d --, 2025 WL 2957002, at *10–12, 16 (S.D. Tex. Oct. 2, 2025). After five weeks had passed after that court's initial order (nine and a half weeks having passed since the petitioner had first expressed a fear of removal to Mexico) and the government had still not provided any indication of an intent to provide the petitioner with the process required to remove him to Mexico or any other third country, he was

essentially being held indefinitely and, therefore, was entitled to a grant of his habeas petition and release from detention. *Sagastizado Sanchez v. Noem*, Case No. 5:25-cv-00104, slip op. at 18–19 (S.D. Tex. Nov. 14, 2025) (citing *Escalante v. Noem*, Case No. 9:25-cv-00182, 2025 WL 2206113, at *4 (E.D. Tex. Aug. 2, 2025)) (holding that a six-week delay in providing the petitioner with his procedures pursuant to 8 C.F.R. § 208.31 created a long overdue delay such that there was not a *significant likelihood* of removal in the reasonably foreseeable future).

      Here, Ms. Nolasco Renderos is entitled to the protections of 8 C.F.R. § 208.31, and yet the government has not yet initiated these procedures. When a person is seeking withholding of removal *and the procedures to which the person is entitled are ongoing*, the normal delay associated with those procedures cannot, at least standing alone, give rise to a *Zadvydas* claim. *See Vasquez Castaneda,* 95 F.4th at 758. But here, Respondents have refused to follow the procedures required by the governing regulations, and it is that refusal that is the source of delay in the adjudication of Petitioner's claim. This does not necessarily entitled Petitioner to immediate release, but it does entitle her to an order that the government either (a) follow the procedures

15

for reasonable fear claims set forth in 8 C.F.R. §§ 208.31, 1208.31, and 241.8, or (b) release her from detention.[2]

### III. Conclusion and Order

For the reasons explained above, the Court hereby:

1. FINDS that Petitioner is entitled to the procedures set forth in 8 C.F.R. §§ 208.31 & 1208.31, including a reasonable fear interview and, if negative, immigration judge *de novo* review of that determination;

2. ORDERS that by 5:00 p.m. ET on January 14, 2026, Respondents shall either (a) REFER Petitioner to an asylum officer for a reasonable fear interview or (b) RELEASE Petitioner from ICE custody;

3. ORDERS that, if Respondents refer Petitioner's case to an asylum officer for a reasonable fear interview, and if such interview and determination is not complete by 5:00 p.m. ET on January 28, 2026, Respondents SHALL RELEASE Petitioner from ICE custody no later than that time and date;

4. ORDERS that any release of Petitioner from detention shall be under the same conditions governing her previous release;

---

[2] Because the Court reaches this conclusion, it need not decide whether Respondents are required to show that Mexico has agreed to accept her, or whether such acceptance is required. The only evidence in the record of Mexico's consideration of Ms. Nolasco Renderos's case is from a fill-in-the-blank form stating that ICE "intends" to remove her to Mexico, ECF No. 10-7 at 2, the initial Notice of Revocation of Release indicating that her "case is under current review by the Government of Mexico for third country removal," ECF No. 10-4 at 2, and the revised Notice of Revocation of Release indicating that ICE "ha[s] provided [her] notice that steps are being taken to secure [her] third-country removal to Mexico," ECF No. 22-1 at 1. But even if Mexico has conveyed a willingness to accept Ms. Nolasco Renderos, or if such acceptance is not required, she is entitled to release if the government refuses to provide her with a reasonable fear interview and, if that determination is negative and if requested, review by an immigration judge.

5.  ORDERS that the parties SHALL FILE a status report regarding the status of Petitioner's detention and any removal proceedings by 12:00 p.m. ET on January 15, 2026 and, if necessary, by 12:00 p.m. ET on January 29, 2026; and

4.  ORDERS that the Court shall retain jurisdiction of this matter to enforce compliance with this Order.


Date:  January 7, 2026                                    _____/s/_____
                                                          Adam B. Abelson
                                                          United States District Judge